HOBART F. FOLLETT, Plaintiff, AND HERMAN F. ZIESMAN, Intervener, Appellants, v. AGGIE C. MEADER, GEORGE W. MEADER, MYRTLE MEADER, HARRIE L. B. MEADER, TOM C. MEADER, IDA MEADER, JESSIE MAY MADDEN AND LOUIS MADDEN.

**Wills:** CONSTRUCTION: PRIOR CONVEYANCE: REMAINDERS. In this action the owner conveyed an undivided one-half interest in certain lands to his son-in-law, clearly excluding a certain tract from the description. By his will he gave a life estate to his widow in all his property, with a remainder in the undivided half of specific property to his son-in-law, explaining that he had previously conveyed the other undivided one-half to him, and left the remainder of his other property to his other heirs. *Held*, that the devise of the remainder in the specific property was limited by the reference to the prior deed and did not pass any interest in the tract excluded from such deed.

**Same:** ADVERSE POSSESSION: EVIDENCE. The evidence in this case is held to show that the possession of plaintiff's grantor was not hostile but merely as executor, and he acquired no title by adverse possession as against the devisees.

**Reformation of instruments:** LACHES. Failure of devisees to assert title to land which they held under the will, where they had no notice that the executor intended to convey the same as part of the property granted to him by the will, was not such laches as would defeat reformation of the deed conveying the same.

*Appeal from Hardin District Court.*—HON. R. M. WRIGHT, Judge.

THURSDAY, MAY 16, 1912.

ACTION for reformation of a deed. The defendants by cross-petition ask that the title to the property in controversy be quieted in them and that they may have par-

ition thereof. The intervener, claiming title under plaintiff, joins in praying for reformation of the deed, and by way of answer to the cross-petition plaintiff and intervener ask that title be quieted in them. By the decree title is quieted in the defendants, reformation being denied, and the plaintiff and intervener appeal.—*Affirmed.*

*E. P. Andrews* and *Geo. W. Ward* for appellants.

*Lundy & Wood* for appellees.

McCLAIN, C. J.—The tract in controversy consists of three adjoining parcels aggregating about nine acres in irregular form in the northeast corner of a government forty. The Iowa river runs north and south through the middle of this forty and the northernmost parcel extends from the east line of the forty to the middle of the Iowa river, while the other two parcels lie along the east line of the forty, but do not extend to the river. The testimony for the plaintiff and intervener tends to show that the portion of this forty lying east of the river, including the tract in controversy with other adjacent property, in all about seventy acres in extent including the tract in controversy, was generally known as the mill property, and at one time belonged to T. G. Copp and had for some years been in the possession of D. G. Meader, who in 1904 deeded to plaintiff by specific description all of the seventy acres except the tract in controversy. It is contended that this conveyance was made in pursuance of some arrangement by which D. G. Meader was to convey the "mill property" to plaintiff, but by mistake of the scrivener the tract in controversy was not included in the description of the property intended and understood to be conveyed. Plaintiff and the intervener who claims under him ask a reformation of the deed so that it shall cover this tract. The description in the deed is very intricate; but, so far

as it applies to this forty, it is entirely specific and intelligible and definitely excludes the tract in controversy and some other portions of the forty lying east of the river. It is to be noticed, also, that the term "mill property" is not used. Therefore it is plain that, if the deed is to be reformed so as to include the tract in controversy, a clear intention that such tract was to be included must be made out. It is also to be noticed as of significance that the tract in controversy is tillable land and for many years has been used exclusively for purposes of tillage, and that its characteristics in no way connect it with any mill property in the proper meaning of that term. The only indication that it was intended to be included is that on a plat book of Hardin county it is a portion of a tract designated as belonging to "Meader and Meader."

To fully understand the title claimed by defendants, it is necessary to trace the title of the tract in controversy and other portions of the same quarter section from T. G. Copp, the former owner. In 1882, said Copp, who was then the owner of the tract and other portions of the quarter section, by warranty deed conveyed to G. D. Meader, his son-in-law, an undivided one-half interest in certain specified lands designated by the same description which was afterwards used in the conveyance from said Meader to plaintiff; no reference being specifically made to "mill property." In the will of said Copp, which was probated in 1884, a life estate in all of the testator's property was devised to his widow, with remainder over to D. G. Meader and his wife, A. C. Meader (the daughter of testator), of "the undivided half of the Eldora flouring mill property and all the machinery and fixtures thereto belonging, situated on the Iowa river east of Eldora, and including about seventy acres of land." To this description is affixed in parentheses the following statement: "I have heretofore conveyed the

1. WILLS: construction: prior conveyance: remainders.

other undivided half of said mill property to the said D. G. Meader." The further provision of the will is that on the termination of the widow's life estate "all the rest and residue of my estate, real, personal and mixed, that may remain after the death of my said wife," shall be "equally divided between" certain persons defendants in this action, who are named and described as the children of D. G. and A. C. Meader. Another person, who is named in the will as devisee in common with the grand-children, need not be here further described or referred to, as her interest is not involved in this controversy. It is clear that Copp, in the devise to D. G. Meader and wife of the remainder of the mill property after the termination of the life estate devised to the widow, intended by that description to transfer to the Meaders the remaining un-divided interest which had not already been transferred to D. G. Meader by deed, and that the tract in controversy, which was not by any possible·construction included in the specific description of the deed to D. G. Meader, was not intended to be included in the devise of the remainder in the mill property. In other words, the description "mill property" found in the devise is limited and ex-plained by reference to the former deed. Therefore D. G. Meader and his wife acquired no interest in the tract in controversy, and on the death of Copp's widow the de-fendants became the sole, absolute and unqualified owners of such tract. .

Now unless D. G. Meader in some other way than through the deed and devise from Copp acquired title to the tract in controversy, or defendants are estopped by laches or otherwise from asserting their title under the devise to them, plaintiff and the intervener claiming under him are entitled to no relief; for whatever may have been the intention or understanding of D. G. Meader in mak-ing the conveyance to plaintiff, the title of defendants would not be affected or in any way impaired.

D. G. Meader was the executor of Copp's will and made his final report in 1905, reciting that as executor he had turned over to Copp's widow all the income from Copp's estate; that said widow died in 1901; that all the money coming into his hands since that date had been the sum of $2,500 "derived from the sale of some real estate"; and that at the death of said widow the remaining property "with the exception of what is known as the mill property" was willed to the defendants, the said mill property being willed to this executor and his wife, Aggie C. Meader"; and, further, that the $2,500 referred to was derived from the sale of property belonging to these defendants and had been turned over to them. Receipts of defendants for the $2,500 referred to were shown. It is apparent therefore that D. G. Meader made no claim as against these defendants to any portion of the property of Copp save that described in the will as the mill property, which by reference to Copp's prior deed clearly did not include the tract in controversy. Therefore D. G. Meader acquired no title by adverse possession of this tract; such possession as he may have exercised being only as executor after the death of Copp's widow, and we may disregard what slight evidence there is in the record that D. G. Meader and persons claiming under him exercised some control over the tract in controversy by way of leasing it for agricultural purposes, and also evidence that he paid taxes on the entire property.

Appellants rely to some extent upon laches of the defendants in not sooner asserting their title to the tract in controversy. But the record is barren of any showing that defendants were chargeable with notice of any claim on the part of D. G. Meader or of the plaintiff to this tract hostile to that of defendants. The deed to plaintiff did not charge them with any notice of an assertion of right on the part

*2. SAME: adverse possession: evidence.*

*3. REFORMATION OF INSTRUMENTS: laches.*

of D. G. Meader to convey this tract, for the description in the deed specifically excluded it. It does not appear that these defendants had any notice of the negotiations with reference to the making of such deed in which it is claimed that the property to be conveyed was referred to as the mill property. Even if they were charged with notice that the tract in controversy was usually understood in the community to be included in the mill property, they are not shown to have had notice that D. G. Meader was attempting to convey the mill property as such.

Finding that the defendants have title to the tract in controversy and that they have been guilty of no laches which estop them from asserting such title as against plaintiff and the intervener, we reach the conclusion that the trial court properly entered a decree quieting title in them.

Appellants' motion submitted with the case to strike appellee's amended abstract is overruled.

The decree is *affirmed*.

WEAVER AND EVANS, JJ., take no part.